**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Benjamin Patrick Holden, | ) | |
| | ) | CV-09-435-TUC-DCB |
| Petitioner, | ) | |
| v. | ) | |
| | ) | |
| Charles L. Ryan, et al., | ) | **ORDER** |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, Benjamin Patrick Holden, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. (Doc. 1.) This matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b) and the local rules of practice of this Court for a Report and Recommendation (R&R) on the habeas petition. In the R&R, the Magistrate Judge recommends to the Court that the petition should be denied and the action should be dismissed. Before the Court are the Magistrate Judge's R&R and Petitioner's Objections.[1] Having conducted a de novo review, this Court will adopt the Report and Recommendation in its entirety, deny the habeas petition and dismiss this action.

**FACTUAL BACKGROUND**

The Arizona Court of Appeals articulated the facts, as follows:

> On July 29, 2002, the victim, T., arrived uninvited at the
> home of L., an acquaintance. A group of people, including

---

[1] Upon request of the Court, the state trial record was also filed. (Docs. 14-17.)

> Holden, were gathered at L.'s home. T., who was both intoxicated and confrontational, entered L.'s bedroom, where L. was in bed with an injured leg. L. and his girlfriend, K., repeatedly asked T. to leave L.'s home, but T. refused. As the argument between L. and T. escalated, L. and K. summoned Holden to the bedroom to "get [T.] out of here." Holden asked T. to leave the home but T. refused and advanced upon him, holding a ceramic cow's head and large conch shells.
>
> Holden brandished a handgun and ordered T. several times to leave the home, threatening to shoot him if he did not comply.
>
> T. refused and Holden shot him in the head, killing him. Holden was arrested approximately one week later, and a grand jury indicted him for first-degree murder. The jury rejected Holden's alternative theories of self-defense and accident and found him guilty as charged. The trial court sentenced Holden to life in prison.

(Doc. 9-1 at 3-4.)

**PROCEDURAL BACKGROUND**

On July 21, 2003, a jury in the Pima County Superior Court returned a guilty verdict for first degree murder of Daniel Tilley. Petitioner was sentenced to life in prison. The Arizona Court of Appeals affirmed the verdict and sentence on the direct appeal and the Arizona Supreme Court denied review. Although his first petition for post-conviction relief was denied without a hearing, the Arizona Court of Appeals corrected the sentence imposed to 25 to life imprisonment and remanded for an evidentiary hearing to determine whether Petitioner had established his counsel was ineffective for depriving him of his right to testify. The state trial court denied the claim on December 30, 2008 without a hearing. Petitioner did not appeal that ruling.

On August 7, 2009, Petitioner timely filed the herein federal petition for habeas corpus, making the following claims: (1) "Holden's conviction and sentence violated the Sixth Amendment because of the ineffective assistance of trial counsel through failure to consult and

2

present necessary experts"; (2) "The erroneous denial of Holden's request for a crime prevention jury instruction denied Holden due process under the Fourteenth Amendment"; (3) "The State's submission of an unredacted tape to the jury and counsel's failure to investigate [the] tape constituted prosecutorial misconduct and a violation of Holden's right to effective counsel"; and (4) "The improper comments made by the prosecutor violated the defendant's right to due process." Respondents filed an Answer on December 9, 2009. The Report and Recommendation issued on June 28, 2012.

The R&R recommends that Ground 2, failure to instruct jury on crime prevention, was fairly exhausted and may be resolved on the merits; Grounds 3 and 4, regarding prosecutorial misconduct were not properly exhausted and procedurally defaulted, such that they are not subject to review on the merits. As the remainder go to ineffective assistance of trial counsel, the R&R resolved the claims on the merits, finding no violation of the 6th Amendment with reference to lack of expert testimony, failure to instruct the jury on crime prevention, and the mistakenly unredacted audio tape of Petitioner's statement to the police.

**STANDARD OF REVIEW**

When objection is made to the findings and recommendation of a magistrate judge, the district court must conduct a de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

**PETITIONER'S OBJECTIONS**

Petitioner objects to the analysis and conclusions contained in the R&R, as follows: "Claim 1 sought relief because of a violation of the Sixth Amendment's right to effective assistance of counsel based on a failure to consult and present necessary experts. Claim 2 presented a due

3

1  process claim under the Fourteenth Amendment based on a denial of
2  Petitioner's request for a crime prevention jury instruction."
3  (Objection at 1.)  Both claims are essentially based in the allegation
4  of ineffective assistance of trial and appellate counsel, as articulated
5  in *Strickland v. Washington,* 466 U.S. 668 (1984)

6       Under *Strickland*'s first prong, a defendant must prove that
7  counsel's performance was "deficient." *Knowles v. Mirzayance,* 556 U.S.
8  111 (2009). Counsel's performance will be held constitutionally deficient
9  only if the defendant proves that it "fell below an objective standard
10 of reasonableness," as measured by "prevailing professional norms."
11 *Strickland,* 466 U.S. at 688. In reviewing counsel's performance for
12 deficiency, courts "must be highly deferential" and avoid the temptation
13 to "conclude that a particular act or omission of counsel was
14 unreasonable" simply because in hindsight the defense has proven to be
15 unsuccessful. *Id.* at 689. Courts are required to "indulge a strong
16 presumption that counsel's conduct falls within the wide range of
17 reasonable professional assistance." *Id.* The defendant bears the burden
18 of overcoming the strong presumption that counsel performed adequately.
19 *Id.*

20      Even if the defendant succeeds in showing that counsel's
21 performance was deficient, the second prong of the *Strickland* test
22 requires the defendant to prove that counsel's deficiencies were
23 prejudicial to the defense. *Id.* at 692. To establish prejudice, the
24 defendant "must show that there is a reasonable probability that, but for
25 counsel's unprofessional errors, the result of the proceeding would have
26 been different." *Id.* at 694. "A reasonable probability is a probability
27 sufficient to undermine confidence in the outcome." *Id.* "It is not enough

28      4

for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. As with deficiency, *Strickland* places the burden of proving prejudice on the defendant, not the government. *Wong v. Belmontes,* 558 U.S. 15 (2009).

The Supreme Court has provided two reasons why the federal court must apply a "doubly deferential" judicial review to a state court's application of the *Strickland* standard under the AEDPA. *Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003). First, as noted above, *Strickland* instructs courts to review a defense counsel's effectiveness with great deference, *Strickland,* 466 U.S. at 689, and AEDPA requires federal courts to defer to the state court's decision unless its application of Supreme Court precedent was objectively unreasonable, *Renico v. Lett,* --- U.S. ----, 130 S.Ct. 1855, 1862 (2010). When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland's* deferential standards apply; hence, the Supreme Court's description of the standard as "doubly deferential." *Yarborough,* 540 U.S. at 6.

Second, our review is "doubly deferential" because *Strickland* provides courts with a general standard, rather than a specific legal rule. *Knowles,* 556 U.S. at 123; *see also Bobby v. Van Hook,* 558 U.S. 4 (2009)(holding that *Strickland* necessarily established a general standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant" (internal quotation marks omitted)). Because judicial application of a general standard "can demand a substantial element of judgment," the more general the rule provided by the Supreme Court, the more latitude the state courts have in reaching

5

reasonable outcomes in case-by-case determinations. *Yarborough,* 541 U.S. at 664. In turn, the state courts' greater leeway in reasonably applying a general rule translates to a narrower range of decisions that are objectively unreasonable under AEDPA. *See id.* Accordingly, we review a state court's decision applying *Strickland's* general principles with increased, or double, deference. *See Knowles,* 556 U.S. at 123. When applying this heightened deferential standard, we review the "last reasoned decision" by the state court addressing the petitioner's claim. *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004).

Here, the last reasoned decision addressing Petitioner's ineffective assistance of counsel claim is that of the Arizona Court of Appeals on state post-conviction review.

**A.  Claim 1:Failure to Present Expert Testimony**

In a nutshell, Petitioner claims that trial counsel was ineffective in that no counter expert testimony was offered during the jury trial. Petitioner argues that the analysis taken in the R&R followed the same missteps taken by the Arizona Court of Appeals; the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented and was an unreasonable application of *Strickland's* prejudice prong. Petitioner claims that the R&R and the state court failed to embrace the facts pointed to by Petitioner. With respect to the potential impact of Dr. Enoka's expert testimony, the R&R took aim at Petitioner's inability to offer evidence "…to undermine the appellate court's finding that 'none of the three eyewitnesses to the shooting corroborated that Danny aggressively lunged at Holden.'" R&R at 14:15-18. Petitioner claims that the R&R, like the Court of Appeals, miscasts the facts upon which Enoka relied, commenting that "neither

6

witness whose testimony he (Enoka) was provided was able to see what happened at the time the weapon was discharged." (Doc. 10 at 18-20.) Petitioner maintains that the failure to present an expert such as Enoka prejudiced his case before the jury, because there was at least a reasonable probability that opinions such as Enoka's and Bevel's would have favorably impacted the jury. For example, jurors would have learned that the blood patterns in the bedroom supported Petitioner's explanation and that his assertion of no intent to pull the trigger was an acceptable explanation under the facts. The expert opinions would have countered the prosecutor's insistence that Petitioner's alleged threats, issued in his effort to make victim leave, conclusively established intent to kill.

During the state post-conviction relief proceeding, Petitioner submitted two affidavits containing the opinions of two experts: one, Enoka, to support his theory that the gun had discharged involuntarily and two, Bevel, to corroborate his theory of how the incident had happened through the analysis of bloodstain patterns. (Doc. 1-1 at 5.) After a review of the record and the two affidavits, the appellate court found that Petitioner did not establish prejudice and that there was no reasonable probability that the result of the trial would be different but for the inclusion of the expert testimony.

A state court's factual findings "are presumed correct unless rebutted by clear and convincing evidence." *See Gonzalez v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003); *Williams v. Taylor*, 529 U.S. 362, 400 (2000). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*,-

1  -- U.S.--- , 131 S. Ct. 770, 784 (2011). "Clearly established Federal
2  law" means federal law clearly defined by the holdings of the Supreme
3  Court at the time of the state court decision. *Cullen v. Pinholster*,---
4  U.S.--- , 131 S. Ct. 1495 (2011) "A state court's determination that a
5  claim lacks merit precludes federal habeas relief so long as 'fairminded
6  jurists could disagree' on the correctness of the state court's
7  decision." *Harrington v. Richter*, 131 S. Ct. at 786 (citation omitted).
8  When the claim is ineffective assistance of counsel, *Strickland* provides
9  the clearly established federal law here. 466 U.S. at 690.

10       The Arizona Court of Appeals addressed this claim.  (Answer, Ex.
11  H at 4-10.)  At this juncture, as a federal court, the issue becomes
12  whether trial attorney decisions were unreasonable resulting in such
13  prejudice to the Petitioner that his due process fundamental right to a
14  fair trial was violated.  "The right of an accused in a criminal trial
15  to due process is, in essence, the right to a fair opportunity to defend
16  against the State's accusations. The right[ ] ... to call witnesses in
17  one's own behalf ha[s] long been recognized as essential to due process."
18  *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973); *see also Crane v.*
19  *Kentucky,* 476 U.S. 683, 690 (1986) (holding that "an essential component
20  of procedural fairness is an opportunity to be heard"); *Washington v.*
21  *Texas,* 388 U.S. 14, 19 (1967) ("The right to offer the testimony of
22  witnesses ... is in plain terms the right to present a defense, the right
23  to present the defendant's version of the facts.... [The accused] has the
24  right to present his own witnesses to establish a defense. This right is
25  a fundamental element of due process of law.").

26       That the Constitution affords Petitioner the right to present
27  witnesses in his defense does not mean that this right is absolute. "Even

relevant and reliable evidence can be excluded when the state interest is strong." *Perry v. Rushen,* 713 F.2d 1447, 1450 (9th Cir.1983). While "[t]he right to present a defense is fundamental," *id.,* "the state's legitimate interest in reliable and efficient trials is also compelling." *Id.* at 1451.  Here the focus is on whether or not the failure to present such an expert witness amounted to constitutional prejudice to Petitioner's case before the jury, ie, experts to contradict the testimony of witnesses against Petitioner.

The appellate court dealt with this issue, as follows:

> Holden argues his trial counsel was ineffective for failing to consult with experts or present expert testimony to support his defense. As part of his post-conviction petition, Holden submitted affidavits containing the opinions of two experts: one to support his theory that the gun had discharged involuntarily and one to corroborate his theory of how the incident had happened through the analysis of bloodstain patterns.
>
> Holden cites cases from Arizona as well as other jurisdictions in which courts have found counsel ineffective for failing to consult with an expert or secure scientific testimony in defending a case. *See, e.g., State v. Edwards,* 139 Ariz. 217, 221, 677 P.2d 1325, 1329 (App.1983) (counsel ineffective in context of insanity defense when he failed to interview defendant's psychiatrist until day of trial); *see also Dugas v. Coplan,* 428 F.3d 317, 331-32 (1st Cir.2005) (finding counsel ineffective because "hopelessly unprepared" to challenge state's "many expert witnesses" on arson); *Holsomback v. White,* 133 F.3d 1382, 1387-88 (11th Cir.1998) (finding counsel ineffective for not calling or consulting expert witness in sexual abuse case with no medical evidence of abuse and only evidence of guilt testimony of alleged victim); *Foster v. Lockhart,* 9 F.3d 722, 726-27 (8th Cir.1993) (finding counsel ineffective for failing to investigate or present defense of impotency in rape case when "uncontradicted medical evidence" showed defendant was "physically incapable of committing the rape in the manner the victim and the State alleged at trial"); *Sims v. Livesay,* 970 F.2d 1575, 1580-81 (6th Cir.1992) (trial counsel's failure to investigate role of quilt in shooting was ineffective when evidence would have "presented the defense with a theory of the case that squared fully with [defendant]'s version of events"). But our evaluation of ineffective assistance of counsel claims is case

9

specific, and Holden is only entitled to relief on this basis if counsel's failure to secure scientific testimony constituted both deficient performance of counsel and could have affected the outcome of the case. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

Because Holden has not shown he was prejudiced as a result, we need not decide whether his counsel's performance was deficient. *See State v. Fulminante,* 161 Ariz. 237, 260, 778 P.2d 602, 625 (1988) (applying prejudice prong first to ineffective assistance of counsel claim); *see also State v. Salazar,* 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985) (failure of one prong of the *Strickland* test results in failure of claim). Holden contends an expert was needed to refute Pima County Sheriff's Detective Marcus Amado's testimony about the location of Danny's body and the lack of blood in the area Holden claimed Danny had lunged.[FN1] In support of this argument, he submitted the opinion of Tom Bevel, a forensic consultant.

Holden also claims Bevel's expert bloodstain analysis supports his claim Danny "had moved to within an arm's length of Holden, who was standing near the doorway." But Bevel's opinion was that Danny had been "standing in the bedroom near the foot of the bed at the time he was shot." This opinion does not conflict with the state's theory, and therefore, we fail to see how it would have changed the outcome of the case had Bevel's opinion been introduced at trial. *See Bennett,* 213 Ariz. 562, ¶ 25, 146 P.3d at 69 (defendant only suffers prejudice from counsel's alleged errors if reasonable probability result of trial would have been different but for errors).

Holden also emphasizes that Bevel stated Danny could have remained upright for a few moments after he had been shot. He argues this evidence "supports the inference that [Danny] could have moved after being shot." But he does not specify how such an inference would have helped his defense when he was claiming Danny had moved toward him before he was shot. Similarly, Holden emphasizes that, in Bevel's opinion, Danny's arm probably was in a raised position when he had been shot. But Bevel never stated that such evidence supports Holden's contention that Danny had been reaching for the gun. Rather, Bevel opines that the bloodstains are consistent with Danny's hand having been up by his head or face, rather than Danny reaching out in front of him. Because Bevel's opinion would not have changed the result at trial, Holden has not established he suffered prejudice as a result of counsel's failure to present that testimony. Holden also argues his trial counsel was ineffective for failing to use crime scene photographs to impeach Amado's testimony that no blood was found near the doorway where Holden said he was standing when he shot Danny. The

> photograph at issue, which was not admitted at trial, shows a tiny bloodstain on the ceiling. At trial, the prosecutor asked Amado, "Did y[ou] find any bloodstains in the area described by Mr. Holden as the area where the incident occurred?" And the detective responded, "No, I did not.
>
> Assuming for the sake of argument Amado's answer was erroneous because of the photograph in question, Holden has not demonstrated he suffered prejudice as a result. Holden's own expert, Bevel, concluded that the photograph "further substantiates that [Danny] was standing in the bedroom near the foot of the bed at the time he was shot, as his head would be near the ceiling and the backspatter would be capable of reaching this area of the ceiling." Thus, Holden's own proffered expert testimony does not support the inferences Holden would have us draw from the location of the ceiling bloodstain. Holden has not demonstrated that the admission of the photograph would have changed the outcome of the case.
>
> Holden has not shown he suffered prejudice by counsel's failure to call a witness on the topic. Enoka would not conclude with certainty the evidence showed the discharge had been accidental but simply concluded the circumstances surrounding the shooting "could have caused Mr. Holden to hold the gun more firmly and thereby unintentionally pull[ ] the trigger." And many of the circumstances on which he based that conclusion were taken from Holden's version of events-a version that was discredited on many points by the testimony of other witnesses. In addition, had the jury believed Holden's version of the events, the jury could have drawn many of the same inferences as Enoka without the benefit of his expert testimony. *See Gorney v. Meaney*, 214 Ariz. 226, ¶ 15, 150 P.3d 799, 804 (App.2007) (expert testimony inappropriate when jury can determine issue without it).
>
> Thus, although Enoka's testimony would have provided a scientific explanation for Holden's theory that he had accidentally pulled the trigger, it would not have been enough to change the outcome of this case, given evidence that strongly contradicted Holden's assertion that the gun had discharged accidentally. Holden discharged the gun within three inches of Danny's head, he did so after repeatedly threatening to kill Danny, and none of the three eyewitnesses to the shooting corroborated that Danny aggressively lunged at Holden. Therefore, although the testimony most likely would have been relevant and admissible, Holden did not suffer prejudice by its absence and the trial court did not err by dismissing the claim.

*State v. Holden*, 2008 WL 4559872 (Ariz.App. January 8, 2008.)

Having carefully reviewed the trial testimony and having compared it to the post-trial affidavits of Bevel and Enoka, all are not inconsistent with and add no new evidence to the evidence that was already before the jury. (Docs. 14 - 17.) It cannot be said that the failure to elicit this particular testimony rendered the result of the trial unreliable or the proceeding fundamentally unfair. *See Lockhart v. Fretwell,* 506 U.S. 364, 369(1993). A review of the trial transcript reveals that, had the jury believed Petitioner's version of events, the jury could have drawn many of the same inferences without the benefit of expert testimony. *See Gorney v. Meaney*, 214 Ariz. 226 (Ariz.App. 2007) (expert testimony inappropriate when jury can determine issue without it.). Consequently, the Court can find no resultant prejudice and this claim fails on the merits. *Ainsworth v. Calderon*, 138 F.3d 787, 791 (9th Cir. 1998).

**B.   Claim 2:Failure to Address Jury Instruction on Direct Appeal**

Petitioner claims that his appellate counsel was ineffective for not raising the issue on direct appeal of the trial court decision not to give the jury a crime prevention instruction. At trial, Petitioner requested the jury be instructed on the crime prevention justification set forth in A.R.S. § 13-411. The trial court refused the instruction, after a lengthy discussion with counsel. Although not specifically raised by appellate counsel in the direct appeal, the Arizona Court of Appeals addressed the substantive question of whether the trial court should have included the crime prevention instruction at trial in the post-conviction and appeal from the post-conviction relief proceeding. (Answer, Ex. H.) The R&R recommends denial of this claim because Petitioner fails to demonstrate that the state appellate court's factual findings were

unreasonable. Petitioner objects that the appellate court bent the facts to sustain the denial of the instruction.

Two questions are raised: first whether there was ineffective assistance of appellate counsel and second whether or not the state appellate court properly resolved the issue of the jury instruction. Because the appellate court directly addressed this issue, there is no *Strickland* prejudice with reference to the ineffective assistance of appellate counsel claim.

The other question is whether or not the failure to give the jury instruction can be raised to a federal constitutional due process violation as interpreted and applied by the state trial and appellate courts. See *Estelle v. McGuire*, 502 U.S. 62, 71-72 (recognizing that erroneous jury instruction under state law could only be cognizable in federal habeas if it so infected trial it violated due process); *Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir.) (recognizing that generally state law errors are not cognizable in federal habeas corpus proceedings), *cert. denied*, 537 U.S. 859 (2002). The state court and the appellate court engaged in factfinding to resolve this issue. The AEDPA requires federal courts to accord more deference to state court decisions underlying a §2254 petition with regards to both law and facts. *See Harrington,* 131 S. Ct. at 785; *see also Robinson v. Schriro*, 595 F.3d 1086, 1099 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 566 (2010). Under the AEDPA, "state court findings of fact are presumed correct unless rebutted by clear and convincing evidence." *Gonzalez v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "Even in the context of federal habeas, … [d]eference does not by definition preclude relief. A federal court can disagree with a state court's credibility

determination and, when guided by the AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Hall v. Dir. of Corrs.*, 343 F.3d 976, 984 n.8 (9th Cir. 2003) ("AEDPA, although emphasizing proper and due deference to the state court"s findings, did not eliminate federal habeas review. Where there are real, credible doubts about the veracity of essential evidence and the person who created it, AEDPA does not require us to turn a blind eye.") "The state court unreasonably applies clearly established federal law if it "either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *DeWeaver v. Runnels*, 556 F.3d 995, 997 (9th Cir. 2009) (quoting *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir. 2002)). This court "must defer to the state court"s factual findings unless a defect in the process is so apparent that "any appellate court . . . would be unreasonable in holding that the state court"s factfinding process was adequate." *DeWeaver*, 556 F.3d at 997 (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)). This is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 (1997). The Supreme Court has held that the petitioner has the burden of showing that the state court decision is objectively unreasonable. *See Harrington,* 131 S.Ct. at 784.

Petitioner's trial attorney argued for the use of the crime prevention jury instruction to the trial judge. His argument was not persuasive, the court ruled against him, and he lodged his objection. (Doc. 16-2 at 109 - 122.) "[I]t is not reversible error to reject a

14

defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory." *Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995)(quotation marks omitted). The issue was addressed by the appellate court, as follows:

> At trial, Holden requested the jury be instructed on the crime prevention justification set forth in A.R.S. § 13-411. The trial court refused the instruction. Holden now contends his appellate counsel was ineffective in failing to challenge that ruling on appeal.
>
> Section 13-411(A) provides a defense to the use of physical force or deadly physical force against another person "if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other's commission of [one of the enumerated crimes]." The statute further provides there is no duty to retreat before using deadly or nondeadly physical force and that a person "is presumed to be acting reasonably" when acting pursuant to the statute. § 13-411(B), (C). Holden contends he was entitled to this instruction because, in attempting to remove Danny from the residence, he was preventing Danny from committing aggravated assault. *See* § 13-411(A) (aggravated assault committed under § 13-1204(A)(1) or (2) one of enumerated crimes under crime prevention statute). The trial court refused the requested instruction after the state argued that the defense was not supported by the evidence.
>
> A defendant is entitled to any justification instruction "supported by 'the slightest evidence.' " *State v. Hussain,* 189 Ariz. 336, 337, 942 P.2d 1168, 1169 (App.1997), *quoting State v. Dumaine,* 162 Ariz. 392, 404, 783 P.2d 1184, 1196 (1989). Holden emphasizes the crime prevention defense is broader than the other justification defenses. Its only limitation upon the use of deadly force is "the reasonableness of the response," *State v. Korzep,* 165 Ariz. 490, 492, 799 P.2d 831, 833 (1990), while "the other justification defenses require an immediate threat to personal safety before deadly force may be used." *Id.* Therefore, the self-defense instruction was not necessarily adequate because a jury could find one without the other. *See id*. (emphasizing differences between § 13-411 and other justification defenses); *State v. Garfield,* 208 Ariz. 275, ¶ 15, 92 P.3d 905, 909 (App.2004) (because crime prevention justification "presents a unique defense," not harmless error when jury merely instructed on self-defense); *Hussain,* 189 Ariz. at 339, 942 P.2d at 1171 (self-defense instruction did not adequately cover the requested instruction based on § 13-411); *see also State v. Taylor,* 169 Ariz. 121, 123, 817 P.2d 488, 490 (1991)

(reversible error to fail to instruct jury when slightest evidence supported crime prevention justification).

Holden contends that, had appellate counsel raised the issue to this court, the outcome of his appeal might have been different. [footnote omitted] *See Bennett,* 213 Ariz. 562, ¶ 25, 146 P.3d at 69. He relies on *Garfield,* issued while his appeal was pending in this court, in which we reversed a conviction for the trial court's refusal to instruct the jury on the crime prevention defense. *See* 208 Ariz. 275, ¶ 15, 92 P.3d at 909. Holden complains that his counsel failed to seek leave to file a supplemental brief pursuant to *Garfield* and, in the alternative, that his appellate counsel could have made the same argument the defendant made in *Garfield* in his opening brief-that the crime prevention instruction applies to an invited guest-based on Arizona law at that time. *See Korzep,* 165 Ariz. at 493-94, 799 P.2d at 834-35 (holding crime prevention defense applicable to resident of house protecting against crime by another resident and suggesting defense applicable to even broader classes of persons).

In *Garfield,* the trial court had refused to provide an instruction on the crime prevention defense because the defendant was only a guest in the home he was arguably trying to protect. 208 Ariz. 275, ¶ 10, 92 P.3d at 908. Anchoring our analysis in the legislative intent behind the statute-protecting Arizona homes from crime-we rejected that distinction and found that such an instruction was reasonably supported by the evidence. *Id.* ¶¶ 14-15, 92 P.3d 905. We reversed the defendant's conviction, finding he had suffered prejudice, in part because the self-defense instruction had not been an adequate substitute. *Id.* ¶ 15, 92 P.3d 905.

We agree with Holden that *Garfield* might have changed the outcome of his case if the evidence supported such an instruction. But unlike in *Garfield,* where we held the defendant was entitled to the crime prevention instruction based on evidence the victim had drawn a gun before the defendant shot him, *id.* ¶ 12, 92 P.3d 905, there was no evidence Danny was threatening anyone with a deadly weapon or dangerous instrument at the time Holden entered the bedroom in an effort to make Danny leave. And even assuming the cow's head or conch shells could be considered dangerous instruments, the record is clear Holden continued to point the gun at Danny well after Danny had put any such items down. Although Holden emphasizes the breadth of the crime prevention defense in comparison to self-defense, the former defense is not available to a defendant who uses greater force than necessary to prevent the crime. *See State v. Martinez,* 202 Ariz. 507, ¶ 12, 47 P.3d 1145, 1147-48 (App.2002) (defendant must have reasonable belief that force need be used and amount of force is necessary to justify actions under crime prevention defense). Holden presented no evidence that, at the

16

> time he first threatened and then used deadly physical force against Danny, Holden could have "reasonably believe[d]" that such force was "immediately necessary" to prevent Danny from assaulting anyone with a deadly weapon or dangerous instrument. § 13-411(A). Therefore, Holden could not have suffered prejudice when the trial court refused the instruction and when appellate counsel failed to raise the issue on appeal. We find no abuse of discretion in the trial court's dismissal of this claim.

*State v. Holden*, 2008 WL 4559872 (Ariz.App. January 8, 2008.)

Having reviewed the trial transcript, this Court does not find that the appellate court's decision was objectively reasonable. Further, the claim of ineffective assistance of appellate counsel lacks a showing of prejudice such that no further review is warranted.

**CONCLUSION**

Accordingly, after conducting a de novo review of the record, which included reading the entire record and the transcript of the trial,

**IT IS ORDERED** that the Court **ADOPTS** the Report and Recommendation (Doc. 10) in its entirety. The Objections (Doc. 13) raised by the Petitioner are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Court has determined, without need for additional argument, to **DENY** the Certificate of Appealability. Rule 11, Rules Governing Section 2254 Cases. The Court has considered specific issues that serve to satisfy the showing required by 28 U.S.C. §2253(c)(2), and finds none present in this case.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED** and this action is **DISMISSED**. A Final Judgment shall enter separately. This case is closed.

DATED this 21th day of September, 2012.

David C. Bury
United States District Judge

17